IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LASHAWN WASHINGTON,
LAVONNE WASHINGTON,
*Plaintiffs*,

vs.   CASE NO: 8:14-cv-3185-T23-AEP

MIAMI-DADE COUNTY,
MONROE COUNTY,
STATE OF FLORIDA,
*Defendants.*

_____/

## MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW

On December 23, 2014, LaShawn and LaVonne Washington (hereinafter "Plaintiffs), registered voters in the State of Florida, Hillsborough County, filed a verified complaint for a Temporary (and Permanent) Restraining Order and/or Preliminary Injunction in the district court for the Middle District of Florida. The Plaintiffs sued the State of Florida, Miami-Dade County and Monroe County (hereinafter "Defendants") alleging nullification of their votes and other civil rights violations which supported passage of 741.212, Florida Statute, under 42 U.S.C. Plaintiffs also alleged abrogation and abridgement of the laws of the State of Florida by the Defendants in failing to enforce Florida's well-prescribed laws pertaining to marriage codified in 1977, 1997, and

1

2008. The district court did not and has not acted on the Plaintiff's Complaint which indicated Plaintiff's request for a preliminary injunction, with the Court being notified at the time of filing and Plaintiffs' Complaint being taken to chambers and before the Court for immediate review on the basis of Federal Rule of Civil Procedure 65(b)—since injury was imminent and that notice and a hearing on the application for preliminary injunction was impractical, if not impossible, given the December holidays and impending January 6, 2015 date to "legalize" gay marriage in the State of Florida.

Given the inaction by the Court to treat Plaintiffs' Complaint as an emergency on the basis of technical or procedural form, though having notice of the need for expedition, Plaintiffs now file their Motion for Restraining Order and/or Temporary Injunction separately and ask it to be granted under Federal Rule of Civil Procedure 65(b), as the issues that make it an emergency are still unsettled. Therefore, Plaintiffs state as follows:

## MEMORANDUM OF LAW

This action challenges the recognition of same-sex marriage in the State of Florida and seeks injunctive relief to enjoin the further issuance of marriage licenses in the State of Florida and Florida Counties to same-sex couples, which commenced on January 6, 2015 despite Plaintiffs' December 23, 2014 timely verified complaint.

In 1977, the State of Florida banned same-sex marriage by statute. In 1997, the State of Florida added a prohibition on the recognition of marriages from other jurisdictions. Though Florida did not recognize the validity of same-sex marriage, in February 2008 a proposed constitutional amendment to ban same-sex marriage was

placed on the ballot for Florida voters. In 2008, 67% of voters in the State of Florida, including the Plaintiffs, approved the amendment that banned both same-sex marriage and civil unions and thus define marriage in Florida as between one man and one woman under the Florida Constitution. The ballot amendment passed in 2008 has not been repealed by Florida voters or the Florida legislature and has not been declared unconstitutional by the Florida Supreme Court.

## STANDARD OF REVIEW

In considering an Emergency Motion for Restraining Order and/or Preliminary Injunction, a court must decide whether a prompt decision is required under the circumstances. For a court to grant the extraordinary remedy of an injunction, the petitioners must show: (i) the likelihood that the moving party will ultimately prevail on the merits of the claim, (ii) irreparable nature of threatened injury and the reason that notice cannot be given, (iii) the potential harm that might be caused to the opposing parties or others if the order is not issued; and (iv) the public interest, if any. Rule 65(b) Fed.R.Civ.P. *See* similar but much stricter standard applied on appeal in *In re Federal Grand Jury Proceedings*, 975 F.2d 1488, 1492 (11th Cir. 1992); *MacBride v. Askew*, 541 F.2d 465 (5th Cir. 1976).

## LEGAL ARGUMENT

The State of Florida has enacted detailed procedures to repeal Florida law. These procedures were not invoked or in the process of being implemented with regard to 741.212, Florida Statute when the two Defendant Counties took judicial action to declare

this well-settled law of Florida as unconstitutional and invalidly applied an incorrect legal standard of review.

741.212, Florida Statute was successfully added to the ballot in 2008. It met the requirements under the Florida Supermajority Requirement Amendment, also known as Amendment 3. The amendment modified Article XI, Section 5 of the Florida Constitution to increase the number of votes required to approve a proposed constitutional amendment from 50% + 1 to 60%, requiring broader support for constitutional amendments. Plaintiffs included among 67% of other Florida voters met the supermajority requirement.

To the contrary, Florida Same-Sex Marriage Amendment (2014) was not placed on the November 4, 2014 ballot in Florida as an initiated constitutional amendment. This measure would have redefined marriage as a union of two persons, essentially legalizing same-sex marriage. This ballot measure may not have been added for several reasons, such as follows: sponsors filed but abandoned or withdrew the measure; sponsors were unable to collect sufficient signatures to qualify it for the ballot; or an individual or group that opposed the measure were successful in a legal action or filed a post-certification signature challenge and prevailed in court. In any case, neither Florida voters nor the Florida legislature initiated or approved this measure to redefine marriage.

**A.     Plaintiffs have a strong likelihood of ultimately prevailing on the merits of their claim.** Florida has prescribed rules on how its amendments may be revised or appealed: via a legislatively-referred constitutional amendment, via an initiated constitutional amendment, via a commission-referred amendment process, or via a

constitutional convention. In rare instances, this might occur in other states (only in Delaware) through direct action of the state legislature with no vote of the people but this is not true of Florida. Florida's constitution can also be changed through judicial action if a federal court declares that part of a state's constitution is unconstitutional under the U.S. Constitution and must be removed or treated as null or a State court altering the state constitution by ruling a voter-approved amendment conflicts with the rest of the constitution in some other way unacceptable to the court and therefore must be removed from that state's constitution and declared null-and-void.

Though the Eleventh Circuit Court declined to overturn the decisions rendered in Miami-Dade or Monroe counties and the U.S. Supreme Court declined to hear challenges, Florida like the majority of other states in the U.S., had independent state grounds for its constitutional ban of same-sex marriage. Even if the constitutional ban of same-sex marriage was stricken, the Eleventh Circuit Court has not held that Florida definition of marriage as between one man and one woman is unconstitutional or inconsistent with the U.S. Constitution. Marriage is a state issue, concerning which the federal government has not preempted the field. Though gay and lesbian couples have sought to both abolish marriage and challenge marriage statutes, they have been unsuccessful since the earliest case decided in 1971 which declared a state statute as allowing marriage only of heterosexual couples—even if no language in the statute expressly imposed such a limitation. *See* <u>Baker v. Nelson</u>, 291 Minn. 310, 191 N.W. 2d 185 (1971) (interpreting statute as allowing issuance of marriage licenses only to heterosexual couples and upholding the constitutionality of the statute) and <u>Jones v.</u>

5

*Hallahan*, 501 S.W. 2d 588, 589 (Ky. App. 1973) (interpreting the statute as allowing marriage only of heterosexual couples though no language in state marriage statutes suggested such a limitation). Additionally, challengers who have argued that same-sex marriage bans unconstitutionally discriminate on the basis of sex is a violation of state or federal constitutions citing *Loving v. Virginia* have resoundingly failed, with courts rejecting this argument. In *Loving*, the United States Supreme Court held that a marriage ban in Virginia between members of the "white race" and of "other races" was a denial of the fundamental right to marry and discriminated unconstitutionally on the basis of race.

While Miami-Dade and Monroe counties have sought to define marriage in their counties, 741.212, Florida Statute applied to the State of Florida in the entirety and all counties. The Defendant Counties have clearly exceeded their authority in attempting to redefine marriage. Like the Florida Same-Sex Marriage Amendment (2014), which was not on the November 4, 2014 ballot, the Defendant Counties have attempted to redefine marriage as a voluntary union to two persons to the exclusion of all others. The Defendant Counties also applied an incorrect legal standard in determining that sexual orientation is a suspect classification and that same-sex marriage is a fundamental right.

The right to marry is deemed fundamental; therefore, any substantial interference with that right must be necessary to further a compelling interest. *Zablocki v. Redhall*, 434 U.S. 374 (1978). Modernly, strict scrutiny review applies to laws which burden the exercise of fundamental rights—including marriage which falls under the penumbra of privacy. However, sexual orientation is not a suspect classification that has been found deserving of strict scrutiny or intermediate scrutiny review but rather rational basis

6

review. Therefore, courts have pointed out that use of racial classifications as in *Loving* are subjected to the "most rigid scrutiny" and therefore must be proven by the State to be necessary to the accomplishment of compelling state objectives. Unlike *Loving*, same-sex marriage and/or sexual orientation under the rational basis standard of review places the burden of persuasion squarely on the plaintiff to show the measure being challenged is not rationally related to any legitimate government interest. The Defendant Counties of the State of Florida, in challenging the ban on same-sex marriage as unconstitutional, has disregarded authoritative and persuasive case law over three decades and the ordinary understanding of marriage, which has provided that marriage is regulated by the states and that states can have prerequisites for issuing marriage licenses—including that couples be of opposite sex to marry.

The federal government and other states provide no clarity on this issue. In the Defense of Marriage Act (DOMA) of 1996, Congress defined "marriage" for purposes of federal law as a "legal union between one man and one woman as husband and wife" and defined the word "spouse" to refer "only to a person of the opposite sex who is a husband or wife." Therefore, DOMA is limited explicitly to heterosexual marriage. In subsequent challenges, DOMA has not been found in violation of either equal protection or due process fundamental rights and that state or federal interests were sufficient to pass the rational relationship test. Courts have held that to deny same-sex couples the right to marry is constitutional and rationally related to legitimate government interests including the furtherance of procreation, the survival of the human race, and the well-being of children by encouraging families where children are reared in homes by the children's

7

biological parents. *See Standardt v. Superior Ct. of Arizona*, 206 Ariz. 276, 77 P.3d 451 (App. 2003) (holding that state statute prohibiting same-sex marriage did not violate due process, equal protection, or privacy and that state's legitimate interest in procreation and child-rearing was rationally related to statutory limitation of marriage to heterosexuals.)

Based on the above and foregoing, it is a strong likelihood that Plaintiffs, presently self-represented litigants seeking counsel, can prevail on the merits against the Defendant Counties that have clearly exceeded their authority in attempting to redefine marriage and in applying the incorrect legal standard. Practically any regulation which furthers a welfare purpose will be found "legitimate"—which is why past challenges to same-sex marriage bans have failed and why the court below abused its discretion through an improper exercise of judicial activism to do an in-run around these established principles. *Stare decisis* is a legal principle by which judges are obliged to respect the precedent established by prior decisions. In a legal context, this is understood to mean that courts should generally abide by precedent and not disturb settled matters. The lower county courts may not rule against a binding precedent, even if these lower courts think that the precedent is unjust. Rather, the higher courts or the legislature have a responsibility to reform or repeal the rule in question—if the court believes that developments or trends in legal reasoning render the precedent unhelpful or wish to help the law evolve.

**B.** **Plaintiffs and other Florida voters will experience irreparable injury if the order is not granted.** Notice was not practical or possible at the time Plaintiffs filed on December 23, 2014. Firstly, the Middle District Court asked the Plaintiffs to delay serving its Complaint on the Defendants since the Motion to Proceed In forma pauperis

had not yet been granted. Secondly, the observance of the federal and state recognized holidays in December following the filing of Plaintiffs' Complaint made notice and a non-emergency hearing impractical or impossible. Thirdly, time was of the essence and which is why Plaintiffs requested a restraining order or preliminary injunction on the basis of emergency since same-sex marriage was anticipated for the State of Florida on January 6, 2015 and not confined to the offending Defendant Counties. The totality of the above circumstances made it such that notice could not be given.

Despite that notice has now been given and same-sex marriages issued, Court action is still required as the issues are unsettled. The Plaintiffs' Complaint met all the requirements under Rule 65(b) to have the preliminary injunction issued on an emergency basis. Though the technical title did not expressly list "Motion for Restraining Order and/or Preliminary Injunction," the Court was aware and had opportunity to treat it as such—particularly given that Plaintiffs' offered to strike through and amend the title of the Complaint that same day or return and refile later that day on December 23, 2014. Therefore, the Plaintiffs should not be barred and held to the 14 days under the Rule in now bringing this action.

The Defendants' acquiescence, abrogation, or gross failure to enforce Florida law are in contradiction to the Florida Constitution and has the effect of voiding or nullifying the vote of the Plaintiffs and other Florida voters. This violates the Plaintiffs' and other Florida voters' equal protection rights. The Defendants' collective failure to faithfully execute the same-sex marriage ban voted into law by the Plaintiffs and 67% of Florida's voters is an injury in fact to the Plaintiffs and is tantamount to a nullification of their

votes, the votes of others, and a longstanding legislative act. 42 U.S.C. § 1983 provides that any person acting under color of state law who deprives a citizen of the United States of any federal right, privilege, or immunity "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...." Defendants, in their official capacities, are persons under 42 U.S.C. § 1983. Accordingly, Plaintiffs face imminent irreparable harm if their vote is nullified or voided in this manner. The Defendants' actions are capable of repetition and thus can result in future harm to Plaintiffs and other Florida voters, in discounting their votes. Plaintiffs have no adequate remedy at law.

**C.      There opposing parties or others will experience potential harm if the order is not issued.** Since January 6, 2014, marriage licenses have been issued to same-sex couples and marriages have been performed. If the order is not issued now to restrain this activity, the opposing parties and others will be harmed if the Plaintiffs prevail and the same-sex marriages are determined invalid and not recognized by the State of Florida. There is already confusion among Florida counties, with some counties declining to issue marriage licenses or perform marriage ceremonies involving same sex couples. Additionally, some counties are changing their laws to either allow same-sex marriage while others are considering getting out of the business of issuing licenses altogether. Litigation has been threatened and filed in the State. Businesses, local governments, etc. are impacted and have unclear guidance on the nature and extent of recognition of same-sex marriage in Florida, given the slip-shod nature of events and how this has been implemented to nullify voter rights, contravene well-established Florida law, with no

specific guidance from the Florida Supreme Court or the Florida legislature. Therefore, there is the potential for harm to those in opposition to this action and other citizens of the State of Florida.

**D.    There is great public interest in this issue that is unsettled and unresolved.**
Plaintiffs along with 67% of Florida voters supported the constitutional amendment to ban same-sex marriage in the State of Florida. These voters have a particularized interest in the Statute's validity and their votes and suffer a particularized injury in having their votes essentially overturned and voided. The effort to redefine marriage like the defeated Florida Same-Sex Marriage Amendment (2014), which did not make it to the ballot, should be restrained along with the issuance of same-sex marriage licenses until these matters are properly settled and those rights only restored, if supported by the voters in a future legislatively-initiated or voter-initiated ballot.

**WHEREFORE**, Plaintiffs respectfully pray that the Court will preliminarily enjoin Defendants, their agents, their successors in office, and all persons acting in concert with them from issuing marriage licenses to same-sex couples in Florida.

Respectfully submitted this 12th day of January, 2015,

_LaShawn Washington_
LaShawn Washington, Pro Se

_LaVonne Washington_
LaVonne Washington, Pro Se

## Certificate of Service

I HEREBY CERTIFY that on January 12th, 2015, a true and correct copy of was served upon the following Defendants via U.S. mail and submitted to the Court for filing:

Bob Shillinger
Monroe County Attorney's Office
111 12th Street
Suite 408
Key West, Florida 33040;

R.A. Cuevas, Jr.
Miami-Dade County Attorney's Office
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128-1902;

A. Lee Bentley, III
State Attorney
400 North Tampa Street
Suite 3200
Tampa, Florida 33602

Pam Bondi
Florida Attorney General
State of Florida
The Capitol PL-01
Tallahassee, Florida 32399-1050;

*LaShawn Washington*
LaShawn Washington,
Plaintiff

*LaVonne Washington*
LaVonne Washington,
Plantiff

5205 79th Street
Tampa, FL 33619
Phone: (813) 677-0700
Email: mucci3@aol.com